C. H. McLeod et al. *v*. State.

1. Bond.   *Code* 1880, § 19.   *What embraced.*

   Section 19, code 1880, does not define the word "bond," but declares that, where used in the code, it shall embrace such instruments as are therein mentioned.   Other instruments may be bonds by virtue of the general law or other statutes.

2. Same.   *Official bond.   Signing.*   *Code* 1880, §§ 994, 996.

   Under §§ 994 and 996, code 1880, which dispense with seals on bonds of public officers and provide that instruments made and delivered, though without seal, shall be operative according to the intent of the makers, as expressed therein, the mere failure by a tax-collector to affix his signature to his official bond, filled out by himself and signed by his sureties, will not invalidate it, if his name, written by himself, appears in the instrument delivered by him as his bond, and accepted and approved.

From the circuit court of Washington county.
Hon. R. W. Williamson, Judge.

Action by the state for use of the board of levee commissioners for the Yazoo and Mississippi Delta, upon the bond of appellant, C. H. McLeod, tax-collector of Sunflower county, for $4,040.37, taxes collected for said usee and unlawfully withheld.   The defendants, McLeod and his sureties, pleaded, among other things, *non est factum*, contending that the instrument sued upon was not a bond because not signed by McLeod.   The facts relative to this contention are as follows : McLeod, having been elected sheriff and *ex officio* tax-collector, for the purpose of executing his bond as collector of the levee taxes, obtained a printed form and filled up the

blank spaces in his own handwriting, inserting his name in two spaces in the body of the instrument intended for the name of the principal obligor. The instrument was presented in this condition to the sureties, who signed it as such, leaving a dotted line above their signatures for that of Mc-Leod. Through inadvertence, McLeod failed to fill out this space with his signature, but delivered the instrument to the board of supervisors, and it was approved as his bond and filed with the chancery clerk. McLeod thereupon took the oath of office as such tax-collector, subscribing his name to the blank form of oath appended to the bond, and entered upon the discharge of the duties of the office.

In view of the opinion of the court, it is not necessary to further state the pleadings or the facts touching other matters in controversy. The sections of the code of 1880 brought into review by the case as presented, are as follows:

"§ 19. The word bond shall embrace every written undertaking for the payment of money or acknowledgment of being bound for money, conditioned to be void on the performance of any duty or the occurrence of any thing therein expressed and subscribed, and delivered by the party making it, to take effect as his obligation, whether it be sealed or unsealed; and when a bond is required by law, an undertaking in writing without seal shall be sufficient."

"§ 994. Any instrument of writing hereafter made and delivered by any private person, without any seal or scroll or other semblance or representation of a seal, shall be operative according to the intent of the maker as expressed in the writing, in the same manner and to as full an extent as if the seal of the maker was thereto affixed."

"§ 996. The bonds of all public officers, and all bonds in any legal proceeding, shall be valid and obligatory on all the signers, without a seal or representation of a seal, in the same manner as if duly sealed."

The trial resulted in a peremptory instruction for plaintiff. Judgment accordingly, and defendants appeal.

*Campbell & Starling,* for appellants.

Under our law, a bond is not validly executed unless subscribed or signed under the bond. Chapter 33, Code 1880, abolishes seals, and § 996 of that chapter provides that bonds of public officers shall be valid and obligatory on all signers, without a seal . . . . in the same manner as if sealed.

By § 19, code 1880, the word "bond" is defined substantially as a written undertaking, "subscribed and delivered by the party making it, to take effect as his obligation." Section 996 only dispenses with seals. It deals with no essentials. In § 19, being a rule for construing the code, the word "bond" is defined by carefully chosen language as an undertaking in writing "and subscribed." It tells how the "party making it" is to manifest that he did make it. Seals were abolished, and subscription by the obligor adopted instead.

Section 403 of the code, intended to validate all official bonds, if delivered as such, provides that they shall be obligatory on every one who *subscribed* it as such. "It is the universal custom at this day to subscribe bonds." *State* v. *Martin,* 56 Miss., 108. In that case, the court said there was no statute defining a bond. Two years later, in 1880, by § 19, the legislature defined a bond, but made no change as to essentials, except to abolish seals. As to the necessity for subscribing, see the *Wildcat Branch* v. *Ball,* 45 Ind., 213; *Board* v. *Sweeney,* 48 N. W. (N. D.), 302.

It was a question of fact whether McLeod intended the writing of his name in the body of the bond as his signature. He testified that he did not. It was for the jury to pass upon. We insist that the bond was neither subscribed nor signed; the office became vacant, and he had no right to collect the taxes, and his sureties were not liable. Laws 1884, 155; *Bennett* v. *State,* 58 Miss., 556; *State* v. *Morgan,* 59 *Ib.,* 349.

*Orrick & Baker,* on the same side.

*Wynn, Thomas & Griffin,* for appellee.

McLeod wrote his name in the body of the bond, and then delivered it, signed by his sureties, and had it approved, and acted under it. This was sufficient signing. 2 Kent's Com., 511; Wood on Stat. Fr., 416; 3 Parsons, Cont., 8; *Gibbs* v. *Dortch,* 62 Miss., 671; Smith on Cont., § 93; Brown, Stat. Fr., 357. If the maker did not intend to deliver it, the case might be different; but, if the maker intended to be bound by it as a complete contract, it is a proper signing. McLeod admits that he thought he had signed the bond; that he intended to do so, and in all things he acted on the idea that it was complete. *State* v. *Martin, supra,* is not an authority here, for in that case the principal did not write his name anywhere, did not read the bond or know what he was signing, and the clerk who approved it knew this. Besides, that was under the code of 1871.

Section 19 of the code of 1880 does not define bonds, but simply provides that certain instruments shall be embraced by the word "bond." This section does not require bonds to be subscribed, but, taken in connection with §§ 993 and 996, means that instruments intended as bonds, and delivered as such, shall have effect as such, and be obligatory on the *signers,* not the *subscribers.*

Cooᴘᴇʀ, J., delivered the opinion of the court.

It is not intended by § 19 of the code to define what a bond is, but to provide that the word "bond" shall embrace, in all cases where used, such instruments as are named in that section. It does embrace all such instruments by virtue of this section; it may embrace others by reason of the general law or specific provisions of other statutes.

The "bond" sued on is the "bond" of McLeod and of those who subscribed it as his sureties, by virtue of §§ 994 and 996 of the code. McLeod wrote the bond, and his name twice appears in the body thereof, written by him. True, he says that he did not intend his name as written to be his final

signature or subscription thereto, but he testifies that the bond, as it now appears, was delivered by him as his official bond, and accepted as such by the approving authorities. He intended the bond, as written by him, to. be operative; and when this appears, and the name appears in the instrument written by the party, such signature, adopted by the final delivery, intended as such, is such an authenticating signature as discloses the purpose of the obligor.

*Affirmed.*